**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (SBN 174156)
Kiley L. Grombacher, Esq. (SBN 245960)
31355 Oak Crest Drive, Suite 210
Westlake Village, CA 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
E-Mail: kgrombacher@bradleygrombacher.com

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC**
S. Mary Liu (CA Bar No. 282884)
17 East Main Street, Suite 200
Pensacola, Florida 32502
Telephone: (850) 202-1010
Fax: (850) 916-7449
Email: mliu@awkolaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| GILBERT QUIJADA, JR., JEFFREY PHILLIPS, and KIMBERLY PHILLIPS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TRAJECTOR, INC., and TRAJECTOR MEDICAL, LLC, formerly known as VET COMP AND PEN MEDICAL CONSULTING, LLC,<br><br>Defendants. | CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND<br><br>Case No.: |

Plaintiffs, GILBERT QUIJADA, JR. ("Staff Sergeant Quijada"), JEFFREY PHILLIPS ("Chief Petty Officer Phillips"), and KIMBERLY PHILLIPS ("Mrs. Phillips") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through undersigned counsel, bring this Class Action Complaint against Defendant Trajector, Inc. ("Trajector") and Defendant Trajector Medical, LLC, formerly known as Vet Comp and Pen Medical Consulting, LLC ("Trajector Medical") (collectively, "Defendants") for their deceptive, unlawful, and abusive practices towards our Nation's disabled persons who have served in the United States armed forces ("Veterans") and their spouses. Plaintiffs seek a declaratory judgment and monetary damages on behalf of the proposed Classes who have been wrongly charged by the Defendants, which acted unlawfully in providing services assisting and preparing Department of Veterans Affairs disability benefits claims, which by law require proper accreditation.

Plaintiffs allege the following based upon personal knowledge, investigation by counsel, and facts that are a matter of public record and, as to all other matters, upon information and belief.

## INTRODUCTION AND FACTUAL BACKGROUND

1. This case is about illegal fees charged to disabled Veterans by Florida-based companies, Trajector, Inc. and Trajector Medical, LLC.

2. This class action lawsuit arises from the unlawful and deceptive practices of Defendants who for years have preyed, and continue to prey, upon our disabled Veterans by charging them, and, as applicable, their spouses, exorbitant and unlawful fees for assistance with the preparation, presentation, and/or prosecution of disability claims and appeals through the United States Department of Veterans Affairs ("VA"), in direct violation of federal law.

3. Moreover, Defendants engage in unfair and deceptive trade practices and predatory collection practices in their unlawful scheme to induce disabled Veterans to

retain their services, only to systematically take advantage of them throughout the VA disability claims process by intentionally ignoring federal regulations and laws which are designed to protect Veterans from overcharging "claim sharks." Indeed, federal regulations and laws require organizations, agents or attorneys who provide consulting services or assistance to Veterans with preparing, presenting, or prosecuting VA disability claims and appeals to receive accreditation in order to be compensated for these services. These regulations and laws also grant the VA oversight authority to these accredited organizations, agents, or attorneys and require those individuals who assist Veterans to comply with certain standards and conduct, such as requiring fees for these services to be reasonable and commensurate to the services performed.

4. Veterans who become disabled after suffering a disease or injury during active military, naval, air, or space service, or whose preexisting conditions are aggravated by such service, may be entitled to monthly tax-free disability compensation benefits from the VA. *See* 38 U.S.C. §§ 1110, 1115, 1131; 38 C.F.R. §§ 3.4(a), (b)(1). To obtain these benefits, a Veteran must submit a formal disability claim for compensation to the VA. *See* 38 C.F.R. § 3.151(a).

5. This disability benefit claim process is intended to be non-adversarial and the Secretary of the VA also has a duty to make reasonable efforts to assist and obtain relevant evidence to help Veteran claimants with their disability benefits claim submissions. *See* 38 C.F.R. § 5103A.

6. Federal law restricts representation of claimants in the preparation, presentation, and prosecution of claims for VA disability benefits to individuals who have been accredited by the VA as a representative, agent, or attorney. *See* 38 C.F.R. § 14.629(b)(1). The same regulatory framework prescribes both the circumstances under which an accredited representative, agent, or attorney  may charge fees and the permissible amount of such fees. *See* 38 C.F.R. § 14.636. Statutory law further prohibits the imposition of any fee for services associated with the preparation or filing

of an initial claim for VA benefits. *See* 38 U.S.C. § 5904(c)(1).

7. Numerous Veterans Service Organizations ("VSOs") help Veterans initiate their VA disability benefits claims at no cost. Many Veterans rely on VSOs to file their initial claims, while others choose to proceed without formal representation or guidance from another organization, agent or attorney.

8. Following an adverse determination or a disability rating perceived as inadequate, a Veteran may seek further review of the VA's decision through an appeal. Veterans may also request an increased disability rating—and a corresponding increase in compensation—if their service-connected impairments have deteriorated. Throughout this process, some claimants continue to act *pro se*, others utilize assistance from VSOs, and some engage the services of VA-accredited agents or attorneys operating on a fee-for-service basis.

9. A fee for representation on a Veteran's benefits claim must be reasonable at all times. *See* 38 C.F.R. § 14.636(e). Pursuant to VA's standards of conduct for accredited individuals, it is a VA-accredited attorney or agent's responsibility to ensure that he or she does not "receive a fee that is clearly unreasonable or otherwise prohibited by law or regulation." 38 C.F.R. § 14.632(c)(5). The reasonableness review process under 38 C.F.R. § 14.636(i) can lead to the suspension or cancellation of accreditation under 38 C.F.R. § 14.633(c)(6), which specifically refers to "[c]harging excessive or unreasonable fees for representation as determined by VA."

10. For years, Defendants, which are not accredited by the VA as representatives, agents, or attorneys, have systematically targeted vulnerable Veterans suffering from service-connected disabilities, charging them unreasonable and excessive fees of $4,500 to $20,000, or more, for services that federal law expressly provides must either be reasonable or be rendered free of charge by VA-accredited

representatives, agents, or attorneys.[1]

11. Defendants' conduct violates 38 U.S.C. § 5904(c)(1), which explicitly prohibits the charging of fees for assistance with preparing and filing an initial VA disability benefits claim, as well as ancillary federal laws protecting Veterans and consumers. *See, e.g.,* 38 U.S.C. §§ 5904(c)(1); 38 C.F.R. § 14.636. Defendants' conduct and actions also violate 38 C.F.R. § 14.636(e) regarding unreasonable contingency fee agreements.

12. Defendants have known for years that their conduct violates federal law and regulations as they, and one of their predecessor companies, Vet Comp and Pen Medical Consulting, LLC, have been repeatedly warned by the Department of Veterans Affairs Office of General Counsel ("VA OGC"), the federal agency responsible for overseeing and regulating Veteran disability claims practices, in written cease-and-desist letters, to cease such activities.

13. On June 29, 2017, the VA OGC sent an explicit cease-and-desist letter[2] to Defendant Trajector Medical (formerly Vet Comp and Pen Medical Consulting, LLC) stating that it "may be engaged in illegal activities, which include the unauthorized preparation, presentation and prosecution of claims for VA benefits, as well as charging claimants for your services." The letter further details Trajector Medical's lack of accreditation, lack of any lawful basis to charge Veterans fees for assisting them in the preparation, presentation, and prosecution of their VA Claims, and that their conduct violates VA standards of conduct prohibiting accredited individuals from engaging in conduct involving fraud, deceit, misrepresentation or dishonesty. The letter ends with "[t]herefore, you and your organization are prohibited by law from representing veterans before VA."

---

[1] *See* https://www.va.gov/OGC/docs/Accred/TipsonFeeAgreementsforVeteransClaims.pdf [https://web.archive.org/web/20260402001504/https://www.va.gov/OGC/docs/Accred/TipsonFeeAgreementsforVeteransClaims.pdf].

[2] Attached as **Exhibit A**.

14. In January 2022, the VA OGC sent another cease-and-desist letter[3] stating that Defendants' conduct "likely violates 38 U.S.C. § 5904" and warned of referral to law enforcement if the Defendants did not comply, yet Defendants have ignored these warnings and continued their scheme, escalating and expanding their unlawful practices rather than ceasing them.

15. To aid in their unlawful enterprise, Defendants employ an automated calling system known as "CallBot" that repeatedly calls VA hotlines[4] using Veterans' personal information such as names, Social Security numbers, and dates of birth, to access and monitor Veterans' private, confidential disability benefits compensation information without adequate consent or disclosure.

16. Defendants use this unlawfully obtained information to determine when a Veteran's disability benefits claim has been approved or their awarded compensation for benefits has been increased.

17. Once CallBot detects an initial award or an increase in a Veteran's disability compensation, Defendants then send a bill to the Veteran based on the newly approved award, often demanding fees equal to at least five times the Veteran's monthly disability payment or, for an increased award, at least five times the increased monthly disability payment. Defendants further launch collection efforts to Veterans characterized by frequent and persistent phone calls, including multiple calls per day, and threats about consequences for nonpayment. The charges are demanded by Defendants *regardless* of whether Defendants' actual services materially contributed to the favorable VA decision(s).

18. These abusive tactics are particularly harmful because they target disabled Veterans, many of whom suffer from Post-Traumatic Stress Disorder ("PTSD"),

[3] Attached as **Exhibit B**.

[4] These VA hotlines are designed for Veteran's to directly obtain information about their disability benefits status and compensation amounts, not third-party companies such as Defendants.

traumatic brain injury, depression, or other service-connected conditions that make them especially vulnerable to harassment and financial pressure.

19. Defendants' contracts and disclosures obscure the nature and basis of their fees, fail to explain that federal law prohibits charging for help with initial claims, and do not clearly disclose that comparable assistance is available at no cost from VA-accredited organizations, agents or attorneys.

20. Defendants' fees are not limited to any actual benefit provided to the Veteran; instead, they apply to all disability claims asserted by, or on behalf of the Veteran, regardless of whether the Defendants assisted with, or participated in, those claims. This practice is deceptive and results in unreasonable, unlawful payments to Defendants as well as Defendants' unjust enrichment.

21. An NPR investigation,[5] conducted in partnership with The War Horse nonprofit newsroom[6] published in December 2025, documented Defendants' unlawful practices through interviews with sixty (60) Veterans who had used Defendants' services, eleven (11) former employees of Defendants, and analysis of multiple cease-and-desist letters from the VA spanning from 2017 to 2022.

22. This investigation revealed that Defendants' fee structure and collection practices violate federal law, that the Defendants lack VA accreditation, and that Defendants continue to operate despite explicit warnings from the federal government to cease and desist these activities that likely constitute unlawful conduct.

23. The VA OGC has made clear that:

> [T]he phrase "practice before VA" signifies the acts of preparing, presenting, or prosecuting a claim for benefits under the laws administered

---

[5] *See* https://www.npr.org/2025/12/02/nx-s1-5507111/disabled-Veterans-investigation [https://web.archive.org/web/20260403210455/https://www.npr.org/2025/12/02/nx-s1-5507111/disabled-veterans-investigation].

[6] *See* https://thewarhorse.org/Veterans-affairs-claim-benefit-company-letters/ [https://web.archive.org/web/20260403211004/https://thewarhorse.org/Veterans-affairs-claim-benefit-company-letters/].

by the VA. ***Preparing a benefits claim generally includes, but is not limited to, consulting with or giving advice to a claimant or potential claimant in contemplation of filing a benefits claim, gathering evidence in support of a benefits claim on behalf of a claimant or potential claimant, or filling out VA forms for their submission to VA***.

https://www.va.gov/ogc/accred_faqs.asp [https://web.archive.org/web/20260403211614/https://www.va.gov/ogc/accred_faqs.asp] (emphasis added).

24. Despite this unambiguous language, Defendants intentionally attempt to deceive the public to garner more business and generate unlawful fees. Defendants' business model is to provide consulting and advice to claimants contemplating filing a VA disability benefits claim, gather evidence in support of a VA disability benefits claim, and even fill out VA forms for their submission by claimants.

25. Defendants' website is simply legal advice tailored to Veterans who are contemplating filing disability benefits claims. This information is provided to entice Veterans to believe Defendants fully understand the VA disability claim process and that Defendants can help them in this process. However, Defendants provide this advice and information despite not being an accredited organization, agent, and attorney.

26. Defendants tout to Veterans on their website that they "can assist Your Benefits Pursuit" by:

- Helping you **gather** all your existing medical and non-medical records.
- **Reviewing** your documentation to help you **identify areas** where medical clarity or detail **may be missing**. It's up to you to decide what to do next.
- **Organizing** your records so that patterns, timelines, and the history of your condition are easier to understand for reviewers.

///

https://www.trajectormedical.com/understanding-competent-medical-evidence-for-va-benefits/ [https://web.archive.org/web/20260403212148/https://www.trajectormedical.com/understanding-competent-medical-evidence-for-va-benefits/].

27. Indeed, this "assistance" are actions and services that the VA deems "representation" which can only be provided lawfully by those accredited by the VA, which Defendants are not. Defendants' activities—including consulting and advising Veterans on claim strategy, instructing Veterans regarding the Compensation and Pension ("C&P") examination process, gathering records or preparing medical evidence, and assembling VA forms—all fall squarely within these prohibited acts.

## JURISDICTION AND VENUE

28. This Court has original jurisdiction over this civil action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed Classes, and there is minimal diversity because the named Plaintiffs and certain members of the Classes are citizens of a different state than Defendants, as required by 28 U.S.C. § 1332(d)(2).

29. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within this District, including targeting Veterans residing in this District with its unlawful and abusive practices, marketing its services to Veterans nationwide and in this District, and directing collection efforts into this District.

30. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the alleged wrongful conduct and events giving rise to Plaintiffs' claims occurred in this District, including the marketing, contracting, services rendered, billing, and collection conduct challenged in this Complaint.

\\\

# PARTIES

## A. PLAINTIFF GILBERT QUIJADA, JR.

31. Staff Sergeant GILBERT QUIJADA, JR. is an adult resident citizen of Los Angeles, California, and disabled Veteran who honorably served in the United States Armed Services, specifically, in the United States Airforce. During Staff Sergeant Quijada's service, he suffered injuries for which he later sought a VA disability rating to receive disability benefits from the VA.

32. Staff Sergeant Quijada engaged Defendants' services in or around August 2024 without knowing, and without being advised, that Defendants were unaccredited and ineligible as a matter of law to provide services in furtherance of organizing, directing, instructing, guiding, advising, and assisting him through the VA disability benefits claim process including the preparation, presentation and prosecution of his VA claim.

33. Specifically, Defendants representatives spoke with Staff Sergeant Quijada and completed a telephonic interview during which they asked many questions, including medical-related questions, and completed certain paperwork determined by Defendants to be appropriate to advance a VA disability claim on behalf of Staff Sergeant Quijada. Staff Sergeant Quijada also provided information including his post-traumatic stress disorder symptoms. Defendants' representative advised that Defendants would fill out, categorize, detail and prepare his claims properly for both a medical assessment and in manner that would maximize his VA disability claim. Defendants further advised they would arrange for his medical appointment, and forwarded paperwork to the medical provider on his behalf.

34. At his medical examination by a medical provider selected and/or arranged for by Defendants, the medical provider reviewed the paperwork selected, completed by Defendants to be used in support of both the medical evaluation of Staff Sergeant Quijada and the subsequent submission to the VA. Staff Sergeant Quijada

later received the VA's decision letter granting a 30% disability rating for which Defendants charged him fees in violation of 38 U.S.C. § 5904(c)(1).

35. Staff Sergeant Quijada advised Defendants that he wanted to appeal the decision. Defendants advised that they would charge an additional $2,000 to provide advice, assistance and support during the appeal, a sum of money that he did not have at the time.

36. Ultimately, Staff Sergeant Quijada, not knowing that Defendants were not permitted to charge for services related to his initial disability claim, and had subsequently performed services that required accreditation as a condition precedent to Defendants' entitlement to any fees, paid a total of $2687.10 in installments, a sum that Defendants were prohibited by law to charge.

37. In addition, the document or retainer prepared by Defendants and signed by Staff Sergeant Quijada contemplated conduct that, unbeknownst to him, was in violation of several of California's consumer protection statutes, including the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, and California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and federal statute 38 U.S.C. § 5904. Thus, when Defendants tendered the contract to Staff Sergeant Quijada who then signed it, the contract was unlawful and, accordingly, void and unenforceable. *See, e.g.,* Cal. Civ. Code §§ 1550 (stating that one of the elements of a contract is "a lawful object"), § 1667 (defining unlawful in the context of contracts); *Green v. Mt. Diablo Hosp. Dist.*, 207 Cal. App. 3d 63, 73 (1989) ("Contracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts. . . . Any such illegality voids the entire contract." (citing Cal. Civ. Code §§ 1667(1), (2)); *Loving & Evans v. Bli*ck, 33 Cal. 2d 603, 609 (1949).

38. Defendants are, accordingly, precluded from making any efforts to recover compensation for services provided under the void contract as they are in violation of the law. The illegality permeated the entire agreement, and Defendants

cannot cure the illegality by securing accreditation after the fact.

39. Plaintiff Staff Sergeant Quijada and putative Class Members for whom Staff Seargeant Quijada brings this action are disabled United States military Veterans who engaged Defendants or their related or predecessor entities to assist them with their VA disability claims or appeals and who were illegally charged or paid fees to Defendants, or suffered from abusive, illegal, and unethical collection efforts in connection with that assistance.

40. Plaintiff Staff Sergeant Quijada and Class Members suffered direct economic injury by paying or being pressured to pay these unlawful, unethical charges and experienced emotional distress and disruption of their financial and medical stability as a result of Defendants' aggressive collection practices.

**B. PLAINTIFF JEFFERY PHILLIPS**

41. Chief Petty Officer JEFFREY PHILLIPS is an adult resident citizen of Sacramento, California and disabled Veteran who honorably served in the United States Armed Services, specifically, in the United States Navy. During his service, Jeffrey Phillips suffered injuries for which he later sought a VA disability rating to receive disability benefits from the VA.

42. In late 2023, Chief Petty Officer Phillips came into contact with Defendants and engaged Defendants without knowing, and without being advised that they were unaccredited and ineligible as a matter of law to provide services in furtherance of organizing, directing, instructing, guiding, advising, and assisting him through the VA disability benefits claim process to include the preparation, presentation and prosecution of his VA claim.

43. Specifically, Chief Petty Officer Phillips retained the services of Defendants to help him with his initial VA disability claim, including a disability evaluation. Throughout the course of his engagement with Defendants, communications occurred primarily through emails, phone calls, and documents

transmitted via DocuSign. Defendants represented that they could obtain medical records that Chief Petty Officer Phillips himself was unable to access and explained that their goal was to assist, help, and advise Chief Petty Officer Phillips through the VA disability process in a manner that would maximize his VA disability rating.

44. Defendants' representatives requested detailed information about his medical complaints, then advised him which conditions to note and which not to note on the forms they provided. Defendants selected and filled out VA claim documents which Defendants advised were necessary, then supplied those documents through DocuSign for Chief Petty Officer Phillips' review and signature. Defendants organized the documents and records, and, after Chief Petty Officer Phillips signed those documents, Defendants submitted the completed documents directly to the VA on his behalf.

45. Defendants initially advised Chief Petty Officer Phillips that he owed them $13,000 for their services. Defendants demanded payment through numerous calls and emails sent to Chief Petty Officer Phillips. Chief Petty Officer Phillips disputed part of this alleged amount owed based on the forms and documents Defendants had submitted on his behalf to the VA because those documents misidentified one of his injuries. Specifically, Defendants had incorrectly listed his leg injury as affecting the opposite leg. Defendants acknowledged this failing and lowered Defendants' demanded amount to $8,000. Not knowing that Defendants had performed services that required accreditation as a condition precedent to Defendants entitlement to any fees, Chief Petty Officer Phillips paid this amount in full.

46. The document or retainer prepared by Defendants and signed by Chief Petty Officer Phillips contemplated conduct that, unbeknownst to Chief Petty Officer Phillips, was in violation of California's consumer protection statutes, including the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, and California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and

Federal Statute, 38 U.S.C. § 5904. Thus, when Defendants tendered the contract to Chief Petty Officer Phillips who then signed it, the contract was unlawful and, accordingly, void and unenforceable. *See, e.g.,* Cal. Civ. Code §§ 1550 (stating that one of the elements of a contract is "a lawful object"), § 1667 (defining unlawful in the context of contracts); *Green v. Mt. Diablo Hosp. Dist.*, 207 Cal. App. 3d 63, 73 (1989) ("Contracts that are contrary to express statutes or to the policy of express statutes . . . are illegal contracts. . . . Any such illegality voids the entire contract." (citing Cal. Civ. Code §§ 1667(1), (2)); *Loving & Evans v. Blick*, 33 Cal. 2d 603, 609 (1949).

47. Defendants are, accordingly, precluded from making any efforts to recover compensation for services provided under the void contract as they are in violation of the law. The illegality permeated the entire agreement, and Defendants cannot cure the illegality by securing accreditation after the fact.

48. Plaintiff Chief Petty Officer Phillips and putative Class Members for whom Chief Petty Officer Phillips brings this action are disabled United States Veterans who engaged Defendants or their related or predecessor entities to assist them with their VA disability claims or appeals and who were illegally charged or paid fees to Defendants, or suffered from abusive, illegal, and unethical collection efforts in connection with that assistance.

49. Plaintiff Chief Petty Officer Phillips and Class Members suffered direct economic injury by paying or being pressured to pay these unlawful, unethical charges and experienced emotional distress and disruption of their financial and medical stability as a result of Defendants' aggressive collection practices.

**C. PLAINTIFF KIMBERLY PHILLIPS**

50. Plaintiff KIMBERLY PHILLIPS is an adult resident citizen of Sacramento, California. Mrs. Phillips was at all times relevant herein the spouse of Plaintiff Chief Petty Officer Phillips and eligible to receive payment as part of Chief Petty Officer Phillips' VA disability payment pursuant to 38 U.S.C. § 1115.

51. Specifically, under VA disability compensation rules, a Veteran with a combined service-connected rating of at least 30% may receive an increased monthly payment based on a recognized adult dependent, such as a spouse or, in some cases, a parent whose income and net worth are below a VA set threshold. A spouse becomes an eligible dependent when the marriage is legally valid for VA purposes (including same sex and certain common law marriages). This increase in monthly payment includes sums received by the VA for the benefit of such qualified dependents.

52. A Veteran must formally add these dependents through VA forms[7] or online, generally within one year of the qualifying event to secure the earliest possible effective date.

53. The amount of additional compensation for a spouse is not a fixed percentage of the Veteran's payment; instead, OVA publishes detailed rate tables that specify dollar amounts by disability rating level (e.g., 30%, 40%, up to 100%) and by dependent status (Veteran alone, Veteran with spouse, Veteran with spouse and parents, etc.), so the dependency increment is determined by cross-referencing the Veteran's combined rating and the number and type of recognized dependents on the current VA compensation rate chart.

54. Defendants' demanded payment from Chief Petty Officer Phillips' was based on VA disability-related compensation that was assigned and attributable, in part, to Mrs. Phillips as a monthly stipend for dependent benefits. Not knowing that Defendants had performed services that required accreditation as a condition precedent to Defendants' entitlement to any fees, Mrs. Phillips and Chief Petty Officer Phillips paid the entire amount Defendants demanded to ensure their debt was paid in full.

55. Mrs. Phillips never signed a contract or agreement with Defendants to pay Defendants for any services they promised and/or performed in relation to her

[7] *See* https://www.va.gov/forms/21-686c/ [https://web.archive.org/web/20260403235339/https://www.va.gov/forms/21-686c/].

husband's VA disability claim for which they would provide services. As such, any purported contractual terms, conditions, and/or obligations that Defendants may allege relate to, affect or proscribe the legal rights of Chief Petty Officer Phillips, including but not limited to illegal contractual obligations for payment and arbitration of any disputes arising from the illegal contract, neither attach to, nor affect Mrs. Phillips' legal rights.

56. Plaintiff Mrs. Phillips and putative Class Members for whom Mrs. Phillips brings this action are eligible to receive payment as part of VA disability payments pursuant to 38 U.S.C. § 1115 ("Eligible Spouses"), but who never individually engaged Defendants or their related or predecessor entities to assist them with the part of any VA disability benefit claim payment. Nevertheless, the Eligible Spouses lost money as a result of Defendants' charges against VA disability payments from which Spousal benefits were calculated and to be paid on their behalf or who made payment directly or indirectly to Defendants.

## C. DEFENDANTS

57. Defendant Trajector, Inc. ("Trajector") is a corporation organized under the laws of Delaware with its principal place of business at 5950 NW 1st Place, Suite 200, Gainesville, Florida 32607.

58. Defendant Trajector Medical, LLC, formerly known as Vet Comp and Pen Medical Consulting, LLC is a limited liability company organized under the laws of Wyoming with its principal place of business at 5950 NW 1st Place, Suite 200, Gainesville, Florida 32607. Upon information and belief, each of the members of LLC are citizens of Florida.

59. Wherever reference in this Complaint is made to any act or transaction of any Defendant, such allocations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of each committed, knew of performed, authorized, ratified and/or directed such act or transaction on behalf of that Defendant

while actively engaged in the scope of their duties.

60. Trajector Inc. and Trajector Medical, LLC, and its predecessor Vet Comp and Pen Medical Consulting, LLC, are Florida-based corporations whose business model consists of marketing “medical evidence” and “consulting” services to Veterans seeking VA disability benefits.[8]

61. At all times relevant herein, Defendants have not been accredited by the VA and have not satisfied the statutory and regulatory requirements for accreditation under 38 U.S.C. §§ 5903–5904 and 38 C.F.R. § 14.629. Thus, Defendants lack statutory authority to lawfully charge fees for services related to VA disability claim preparation, presentation, and/or prosecution.

62. Though Defendants present themselves as providing limited services to Veterans, and not as providing consultation or assistance or acting in any way related to the preparation, presentation, or prosecution of claims, their services in fact include those actions. Specifically Defendants provide advice about the VA disability claims process, collect medical and other records, assemble documentation, assist in the completion of forms, communicate with Veterans on how to improve their chances of success in obtaining VA disability compensation benefits, forward communications and forms to the VA on the Veteran’s behalf, and, in many instances, assisting in filling out forms to be submitted to the VA, all of which violate federal law. [9]

63. Defendants’ conduct of charging contingency-style fees tied to VA award

[8] *See* https://www.trajectormedical.com/#what-we-do [https://web.archive.org/web/20260404000359/https://www.trajectormedical.com/homepage-cta-v2/].

[9] *See* https://www.trajectormedical.com/types-of-va-benefits-medical-evidence-needed-for-disability-compensation/ [https://web.archive.org/web/20260404000851/https://www.trajectormedical.com/types-of-va-benefits-medical-evidence-needed-for-disability-compensation/]. Defendants advertise “Whether you’re just starting your application or involved in the appeals process, Trajector Medical experts can help you – not only identify your symptoms, but also map their causes and provide a clear, research-backed report of these symptoms and their connections.”

approvals or award increases is without proper legal authority.

64. Neither the Defendants nor any of their employees, agents, or representatives have ever passed the VA accreditation examination, undergone character review by the VA's OGC, or obtained the approvals necessary to represent Veterans before the VA to lawfully charge Veterans for its service, which include providing advice to Veteran's about the disability process or gathering and preparing evidence for Veterans.

65. The Defendants are owned and operated by co-founder and Chief Executive Officer, Jim Hill, a Navy veteran, and co-founder and Chief Medical Director, Gina Uribe, who is a Florida licensed Advanced Practice Registered Nurse (APRN).

66. Defendants employ numerous staff members whose duties include enrolling Veterans into Service Agreements (contingency fee agreements); identifying appropriate VA disability forms to complete; consulting and strategically advising Veterans with VA, medical, and related disability claim forms; assisting in filling out of such forms and/or providing guidance on where and/or what information and/or data to include or provide; gathering records or medical evidence to submit to the VA; forwarding forms to the VA; communicating with and consulting Veterans; submitting personal identifying information into the VA's CallBot system; monitoring disability payments; calculating fees; and executing the fee-charging and collection scheme described herein. Defendants generate millions of dollars in annual revenue through these unlawful fees imposed on vulnerable disabled Veterans, making this scheme one of the Defendants' primary sources of profit.

## STATUTORY AND REGULATORY FRAMEWORK

### A. The History of VA Disability Compensation Benefits

67. The United States Department of Veterans Affairs ("VA") is organized into three administrations: (a) Veterans Benefit Administration ("VBA"); (b) Veterans

Health Administration ("VHA"); and (c) National Cemetery Administration ("NCA"). The VBA provides a variety of disability compensation, pension, education, and more.[10] VBA is the administration involved in approving and awarding VA Disability Compensation.

68. The United States recognizes the effects of military service on Veterans that result in disabilities that are service connected and secondary service connected, from diseases, or injuries incurred or aggravated during active military service.[11] The VA's disability program provides monthly VA disability compensation payments to veterans who suffered injuries during their military service or secondary to their military service.

69. The VA administers one of the largest disability compensation programs in the nation.

70. The VA reported providing $195 billion in compensation to over 6.9 million Veterans and their families in fiscal year 2025.[12] Veterans and their families receive monthly disability compensation payments for partial or complete disabilities.

### B. Federal Law Prohibits Charging Fees for Initial Disability Claims Prior to Approval.

71. Federal law governing representation of Veterans before the VA reflects a strong public policy of protecting Veterans from exploitation in connection with their disability benefit claims.

72. Under 38 U.S.C. § 5904(c)(1), no fee may be charged, allowed, or paid for services provided to a Veteran before the date on which the VA provides written notice of its initial decision on a disability claim. In other words, no fees may be

---

[10] *See generally* https://www.va.gov/ [https://web.archive.org/web/20260404001206/https://www.va.gov/].

[11] *See generally* https://www.benefits.va.gov/compensation/ [https://web.archive.org/web/20260404001429/https://www.benefits.va.gov/compensation/].

[12] *See* https://www.gao.gov/products/gao-26-108844 [https://web.archive.org/web/20260404001725/https://www.gao.gov/products/gao-26-108844].

charged for services provided relating to a Veteran's initial disability claim. *See also* 38 U.S.C. § 5904(a). The VA's implementing regulation at 38 C.F.R. § 14.636 likewise prohibits fee agreements that violate this statutory bar.

73. The VA guidance documents and specific correspondence to Defendants' make clear that charging for work framed as "preparing the veteran" but directed toward claim development is still prohibited, as that distinction is considered a "distinction without a difference."[13] The VA has explicitly stated that assistance with gathering documents, filling out forms, and other preparation work constitutes unlawful fee charging in violation of 38 U.S.C. § 5904(c)(1) and is therefore prohibited regardless of how the service is labeled or marketed to Veterans.

74. These statutory provisions reflect a clear Congressional intent to protect Veterans from being charged for assistance with initial disability claims, ensuring that Veterans receive free assistance from a VA-accredited representative—such as the Veterans of Foreign Wars ("VFW"), American Legion, Disabled American Veterans ("DAV"), and a VA-recognized VSO—when they file for VA benefits.

### C. The VA Has Strict Accreditation Requirements and Statutory Restrictions.

75. VA accreditation requirements under 38 U.S.C. § 5903 and 38 C.F.R. § 14.629 provide that only properly accredited attorneys, claims agents, or representatives of a recognized VSO may assist in the preparation, presentation, or prosecution of VA claims for compensation.

76. Specifically, individuals may not assist Veterans with preparing, presenting, and prosecuting claims for VA benefits unless they are one of the following: (1) an attorney licensed to practice law in at least one state; (2) an accredited claims

---

[13] *See* https://thewarhorse.org/veterans-affairs-claim-benefit-company-letters/#:~:text=Trajector%20isn't%20the%20only,asked%20about%20the%20warning%20letters [https://web.archive.org/web/20260404002507/https://thewarhorse.org/veterans-affairs-claim-benefit-company-letters/]..

agent employed by or representing a VSO; (3) a VA-accredited attorney; or (4) other representatives specifically approved by VA.

77. The accreditation process includes specific requirements designed to protect Veterans. To obtain accreditation as a claims agent, an individual must satisfy multiple requirements, including demonstrating good character and reputation, passing a written examination administered by the VA with a score of 75% or higher, being an employee or member of a VSO, undergoing character review by the VA's OGC, and meeting additional requirements specified by VA regulations.

78. The VA maintains public lists of accredited representatives and publishes Frequently Asked Questions ("FAQs") explaining that accredited representatives provide assistance free of charge to claimants for initial claims, and may charge fees for appeals or increases to disability rating contingent on a favorable decision and subject to VA approval and fee schedules.[14]

79. Defendants and their principals have never been accredited by the VA and therefore may not lawfully charge for claim preparation, presentation, or prosecution services.

**D. The Department of Veterans Affairs Has Sent Warnings to Defendants.**

80. Through Freedom of Information Act ("FOIA") requests and public records obtained by investigative journalists, it has been revealed that the VA's OGC sent Defendants and their predecessor company multiple warning and cease-and-desist letters spanning from 2017 to 2022.[15]

81. On February 14, 2017, the VA OGC sent Vet Comp and Pen Medical

[14] *See* https://www.va.gov/resources/va-accredited-representative-faqs/ [https://web.archive.org/web/20260404005132/https://www.va.gov/resources/va-accredited-representative-faqs/].

[15] *See* https://thewarhorse.org/Veterans-affairs-claim-benefit-company-letters/ [https://web.archive.org/web/20260404002507/https://thewarhorse.org/veterans-affairs-claim-benefit-company-letters/].

Consulting, LLC (Defendants' predecessor entity) a written warning letter indicating that the VA had reason to believe the Defendants "may be engaged in unlawful or illegal activities" in violation of 38 U.S.C. § 5904 and demanding that the Defendants cease such conduct.

82. Most significantly, on January 28, 2022, the VA OGC sent a comprehensive cease-and-desist letter to Defendants addressed to Defendants' CEO Jim Hill, providing detailed legal analysis of Defendants' fee practices and explicit warning as follows:

> The Department finds it likely that your company violates 38 U.S.C. § 5904. Accordingly, we demand that you cease all preparation, presentation and prosecution of VA benefit claims. If you do not comply with this demand, the Department will refer the matter to appropriate Federal and State law-enforcement authorities.

83. The January 2022 letter, comprised of approximately twelve pages of detailed legal analysis, identified multiple specific legal violations in Defendants' business practices, including: (1) charging fees for assistance with initial claims in violation of 38 U.S.C. § 5904(c)(1), (2) operating as an unaccredited claims consultant in violation of 38 U.S.C. § 5903, (3) charging contingency-style fees based on VA rating increases without proper accreditation or statutory authority, and (4) using contracts that obscure the true nature of Defendants' fee obligations to Veterans and fail to adequately disclose the legal restrictions on fee-charging.

84. Despite these explicit warnings from the VA OGC, Defendants have continued, and indeed escalated, their unlawful and abusive fee collection practices.

85. As of the date of the NPR investigation published in December 2025, more than three years after the January 2022 cease-and-desist letter, Defendants remained in business, continuing to charge Veterans unlawful fees and pursuing aggressive collection efforts against the Veterans who contested these charges.

## DEFENDANTS' UNLAWFUL BUSINESS MODEL

### A. Defendants' Represented Services are Different than the Actual Services Performed.

86. Defendants' business model relies on mass acquisition of Veterans as "clients," the provision of minimal or illusory front-end work, automated monitoring of VA benefit changes through its proprietary CallBot system, and aggressive, formulaic billing of fees tied to those changes without regard to whether Defendants actually contributed to the outcome.

87. Defendants market their services by stating they provide Veterans with comprehensive "medical evidence packets," and assistance in "understanding, identifying, and documenting their medical conditions."

88. In practice, Defendants perform many functions that go well beyond these activities including assistance with obtaining medical and other relevant records, organizing documentation, assembling documentation, assisting in the preparation and/or completing of forms, communicating with Veterans on how to improve chances of success in process, forwarding communications and/or forms to the VA on the Veteran's behalf and, in many instances, and assisting in filling out forms or filling out the entirety of forms to be submitted to the VA.

89. Public online reviews either through Better Business Bureau ("BBB")[16] or Google confirm that Defendants perform activities that constitute the "preparation, presentation, and prosecution" of VA disability claims, despite not being accredited. Multiple Veterans state that Defendants' completed relevant VA forms and paperwork, prepared evidence packets, reviewed medical history, and guided them "every step of

[16] *See also* https://www.bbb.org/us/fl/gainesville/profile/medical-consultants/trajector-medical-0403-235969292/customer-reviews [https://web.archive.org/web/20260406013056/https://www.bbb.org/us/fl/gainesville/profile/medical-consultants/trajector-medical-0403-235969292/customer-reviews.

the way" through the VA disability benefits claim process.[17]

- On January 6, 2026, Edward H. commented on Trajector's BBB page that "Ivy was very helpful every step of the way from the start to the finish, *from initial enrollment to medical history to filling out paperwork*, and answered any questions that I had." (Emphasis added.).
- On March 2, 2023, Rebecca C. commented that "Since I contacted Trajectory they have made it easier on me to file my claims. They have walked through the process which helped me. They assisted me in completing the necessary documents to file and appeal my case."
- On April 12, 2023, Alex Q. wrote on BBB: "Lied about whether they charge for the initial rating. In the contract it is written as you pay for the increase. I verbally confirmed that if I filed with them for my initial rating, they would only charge for subsequent increases. Then they charged me $10k for my initial rating."
- On May 2, 2023, Austin M. wrote: "Stay away from this company! They take advantage of veterans in need. They provide no service other than filling out paperwork and they charge a ridiculous amount, I got 70% then an increase to 80% and they want my entire VA check for 5 months."
- On June 8, 2023, Eric W. wrote on BBB: "You're constantly getting calls from individuals who speak very poor English and are reading off of a script. The second you ask them a question not covered in their script they have no idea how to answer. All they do is fill out the claim form required by the VA (had I known this is it I would have done it myself and still been able to obtain the same rating). You would think with the costs of their service you would get first-class customer care

[17] *See id.*

however that is far from the truth. I caution anyone who is considering using them.

- On June 13, 2023, Trajector replied to Eric W. on the BBB website and stated: "***We understand that our services encompass much more than just medical evidence development***, and we are dedicated to offering comprehensive support to help Veterans identify potential VA disability benefits they medically, legally, and ethically qualify for." (Emphasis added).
- An unnamed complainant on April 17, 2023 wrote on the BBB website: "I came into contact with Trajector Medical in October 2022. Their agreement states that they work to create a nexus link to your disability and your time in service, but they did not do anything other than auto fill some forms with information you provide. I never once spoke to a licensed medical expert or qualified health care professional in regards to my disabilities, so how could they provide a nexus link. They state in their agreement that they do not charge you for anything other than evidence development and consulting, but they are now asking for $15000 for auto filling forms available through the VA website."

90. Defendants' admissions and statements by Veterans to whom Trajector have provided their "services" directly contradict Defendants' assertion that it merely "identifies conditions" and does not engage in VA claim preparation.[18]

91. However, after engaging in the above practices without the required accreditation, and assuming the duties and legal responsibilities that come from assisting in the preparation, presentation, and/or prosecution of claims, Defendants'

[18] *See* https://www.trajectormedical.com/ [https://web.archive.org/web/20260406013946/https://www.trajectormedical.com/homepage-cta-v2/].

services are inadequate and do not fully protect the interests of Veterans. Yet, Defendants aggressively collect the maximum amount of fees that accredited organizations are able to collect if they handle the claim from inception through appeal, regardless of the minimal, inadequate and generic services performed, which are not tied directly to the disability payments that are awarded to Veterans, and without securing and maintaining the required accreditation required by law.

92. Moreover, Defendants' systematic conduct of failing to disclose to Veterans that virtually identical services are available completely free from VA-accredited nonprofits—such as the VFW, American Legion, Disabled American Veterans, and other recognized VSOs—constitutes material deception that prevents Veterans from making truly informed decisions about whether to engage Defendants' services.

**B. Defendants' Fee Structure is Based Solely on Disability Payment Increases and Has No Rational Relationship to the Services Performed.**

93. Defendants' standard fee model typically charges Veterans a fee equal to at least five times (500%) of the Veteran's monthly disability payment. For Veterans receiving a new disability rating through an initial claim (rather than an increase to an existing rating), Defendants charge a fee equal to at least five times the monthly disability payment amount. Although charging a fee for assistance with an initial claim is prohibited, Defendants' fee structure nevertheless results in charges of $4,500 to $20,000 or more for individual Veterans, depending on the disability rating received and the monthly payment amount, for services for which charging a fee is expressly prohibited.

94. For Veterans who receive an increase to an existing disability rating (rather than an initial award), Defendants also charge a fee equal to at least five times (500%) of the Veteran's monthly disability payment. For example, a Veteran receiving

a monthly award of $2,000 in disability benefits would be charged $10,000 (equal to 500% of the $2,000 award), and a Veteran receiving a new monthly disability benefit of $3,500 would be charged $17,500 (equal to 500% of the $3,500 monthly benefit).

95. Defendants' fee structure has no rational relationship to the actual services Defendants provide or the actual work involved in assisting a Veteran with a claim or appeal.

96. Instead, Defendants' fee is purely contingent on the Veteran receiving a VA benefit award or increase, and the amount is determined unilaterally by Defendants based solely on the size of the benefit or increase, without any consideration of whether Defendants materially contributed to that outcome or performed meaningful work in support of the Veteran's disability claim.

97. Defendants' fee structure violates 38 U.S.C. § 5904 for at least four independent reasons: (1) it constitutes a fee charged for assistance with VA disability claims and benefits by unaccredited agents; (2) many of Defendants' fees are charged for assistance with initial claims, which is explicitly prohibited under 38 U.S.C. § 5904(c)(1); (3) the fee is not subject to prior VA approval and does not meet the requirements for fee arrangements under 38 C.F.R. § 14.636; and, (4) Defendants are not accredited representatives, attorneys, or members of a VSO, and therefore have no legal authority to charge any fee whatsoever for representing Veterans before the VA.

### C. Defendants Use its Automated Monitoring CallBot System to Improperly Access Veterans' Account Information.

98. A central and particularly egregious feature of Defendants' business model is the CallBot automated calling system, which repeatedly accesses VA phone lines intended for Veterans to check their own payment status and account information. These hotlines are provided by the VA exclusively for Veterans' personal use to obtain information about their own benefits, and they are not intended to be accessed by third parties or by companies representing Veterans.

99. Defendants' personnel input Veterans' personal identifying information ("PII")—including full names, Social Security numbers, and dates of birth—into this CallBot system without obtaining explicit informed consent from the Veterans. Instead, Defendants' only mention of this practice is through vague contract language that does not clearly disclose the specific purpose and scope of the monitoring. Once input into the system, CallBot automatically dials the VA's automated payment hotlines, navigates through the prompts using the Veterans' PII, and retrieves current benefit amounts about that Veteran.

100. By comparing Veterans' disability benefit amounts over time, Defendants identify which Veterans' disability compensation has increased since they originally engaged Defendants' services and calculates a fee equal to at least five (5) times the monthly increase or, in the case of new awards to Veterans who previously had no VA disability rating, at least five (5) times the new monthly payment. For many Veterans, this results in invoices ranging from several thousand dollars to more than $20,000. Moreover, these fees are often completely disconnected from any specific work performed or services provided by Defendants, and calculated unilaterally by the Defendants. For example, Defendants charge the additional fee for a Veteran's increase in disability payments even if Defendants had no involvement whatsoever in the increase.

101. Because Defendants do not adequately disclose their practices or obtain knowing consent from Veterans, the use of CallBot to monitor Veterans' disability payments constitutes unauthorized access to Veterans' PII and confidential financial information, misuse of VA phone systems that are intended exclusively for Veterans' personal use, and amounts to identity-based fraud. Defendants use Veterans' PII without their informed consent to access their private financial information.

102. Veterans who initially engaged Defendants' services were not clearly informed—through disclosures in plain language—that Defendants would use their PII

to systematically monitor their disability payments for the specific purpose of determining billing amounts, even where no service was performed for a particular disability payment increase, and triggering aggressive and abusive collection efforts. Rather, Defendants' Service Agreements contain vague language stating that Defendants "may use personal information about the veteran to access VA systems," without explaining the specific personal information to be used, the specific monitoring and billing purpose or the consequences of such monitoring.

**D. Defendants Use Aggressive and Unlawful Collection Tactics.**

103. Once Defendants' CallBot system detects that a Veteran has received a disability payment increase, Defendants immediately initiate collection actions and efforts against the Veteran, often within days or even hours of the benefit increase being deposited into the Veteran's financial account.

104. Defendants' collection practices include:

- multiple automated collection calls per day, sometimes two to three calls daily directed at the same Veteran;
- language threatening legal action, lawsuits, and damage to the Veteran's credit score;
- demands for payment that do not clearly explain the legal basis for the fee or the Veteran's right to dispute the charge;
- continued collection efforts even after the Veteran has disputed or declined to pay, and asserted that the fee request is unlawful and prohibited by federal law; and,
- collection efforts targeting Veterans who have already paid Defendants' charges and are disputing the amounts demanded or seeking refunds.

105. These collection practices constitute harassment and abuse in violation of applicable laws.

106. Many Veterans subject to Defendants' collection practices are elderly, disabled, or suffering from service-connected mental health conditions (including "PTSD," traumatic brain injury, depression, anxiety, and other conditions) that make them particularly vulnerable to aggressive collection harassment and that may impair their ability to effectively resist collection efforts or assert their legal rights.

107. Defendants' collection practices have caused documented emotional distress to Plaintiffs and Class Members, including severe anxiety, humiliation, feelings of hopelessness, and difficulty managing finances and obtaining necessary medical treatment.

108. Many online testimonials describe these abusive collection practices:

109. Despite their threatening, harassing, and aggressive collection practices,

**HL D**

**Date:** 01/30/2023

For the last few months, I keep getting automated emails that dont make sense. They are overcharging me for claims I did by my self. Even after I explained to them numerous times and sent in documents. my raiting increased only after I submitted my own claims and they are still trying to charge me for it. Dont go with this company, instead, educate your self on the VA system, its not rocket science. Plenty of free resources out there. After you educate your self, work with a VSO from DAV or American Legion etc... and have them double check your claim. They will tell you what you need and they will upload it into the VA system for you. No one will handle your claim for you better than you doing it your self with SOME help from a VSO. You are living in fantasy land if you think you can just fire and forget and you will magically get to 100% without you lifting a finger. The world doesnt work like that. Most veterans can do these claims like I described above without getting ripped off 5 months worth of benefits (apx $ [illegible]) bill due to trajector medical. Plus they milk it so they can get the highest possible amount. Also, there staff seem not to know basic information that you can learn online on the VA website and law firms.

upon information and belief, Defendants have never initiated a formal legal proceeding against any Veteran to collect on an alleged debt arising from services performed for a Veteran under their Service Agreement.

///

///

**E. Defendants Mislead Veterans Through Lack of Transparency, Material Omissions, and Lack of Informed Consent.**

110. Defendants' Service Agreements contain vague and insufficient disclosures regarding the Defendants' fee structure, the legal basis for the fees, the availability of free services from VA-accredited nonprofits or VSOs, and the specific purposes for which Defendants will use Veterans' PII.

111. The contracts provided to Veterans do not clearly explain or adequately disclose:

- that federal law (38 U.S.C. § 5904) prohibits charging fees for assistance with initial VA disability claims;
- that Defendants are not VA-accredited and therefore have no legal authority to charge fees for assistance with Veterans' disability claims;
- that virtually identical services are available completely free from VA-accredited organizations such as VFW, American Legion, and Disabled American Veterans;
- the specific fee amount that Defendants will charge, or the precise formula by which the fee is calculated;
- that Defendants' fee is triggered by ANY award of, or increase in disability benefits, regardless of whether Defendants contributed to that increase or performed any meaningful work;
- that Defendants will use the Veteran's PII (specifically, Social Security number, birthdate, name) to monitor the Veteran's disability payments without affirmative consent for the purpose of assessing fees on any increase;
- the specific circumstances under which a Veteran may be released from fee obligations or terminate the Defendants' Service Agreement; and,
- the Veteran's right to dispute the fee or appeal Defendants' fee

calculation or demand for payment.

112. When a Veteran attempts to terminate their relationship with Defendants, the Defendants refuse to release them from fee obligations, claiming that the Service Agreement constitutes a binding, enforceable contract that obligates the Veteran to pay fees regardless of the circumstances. However, as described above, the contracts are illegal, void, and also unenforceable against public policy because they violate applicable law and attempt to compel payment of fees that federal law explicitly prohibits.

113. Defendants' misrepresentations and material omissions constitute deceptive practices under the Federal Trade Commission Act (15 U.S.C. § 45) and the California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq*.).

## CLASS ACTION ALLEGATIONS

114. Plaintiffs bring this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following:

**Nationwide Class of Initial Claimants**

All individuals residing in the United States who are veterans of any branch of the United States Armed Forces who, from March 1, 2022, through the date of class certification, paid Defendants or any other operating entity of Defendants, directly or indirectly and/or Defendants claim have any purported obligation to pay in the future, relating to an initial claim for Veteran Administration disability benefits, and from whom Defendants charged, demanded, or collected any fee or payment in connection with such assistance.

**Nationwide Class of Non-Initial Claimants**

All individuals residing in the United States who are veterans of any branch of the United States Armed Forces who, from March 1, 2022, through the date of class certification, paid Defendants or any other

operating entity of Defendants, directly or indirectly and/or Defendants claim have any purported obligation to pay in the future, relating to an non-initial claim for Veteran Administration disability benefits, and from whom Defendants charged, demanded, or collected any fee or payment in connection with such assistance.

**Nationwide Class of Dependent Claimants**

All Eligible Dependent Spouses of veterans of any branch of the United States Armed Forces residing in the United States who, from March 1, 2022, through the date of class certification, suffered any reduction in their dependent related VA disability benefits as a result of Defendants or any other operating entity of Defendants which, directly or indirectly, collected any fee or payment in connection with initial claims for VA benefits.

**California Class of Initial Claimants**

All individuals residing in California who are veterans of any branch of the United States Armed Forces who, from March 1, 2022, through the date of class certification, paid Defendants or any other operating entity of Defendants, directly or indirectly and/or Defendants claim have any purported obligation to pay in the future, relating to an initial claim for Veteran Administration disability benefits, and from whom Defendants charged, demanded, or collected any fee or payment in connection with such assistance.

**California Class of Non-Initial Claimants**

All individuals residing in California who are veterans of any branch of the United States Armed Forces who, from March 1, 2022, through the date of class certification, paid Defendants or any other operating entity of Defendants, directly or indirectly and/or Defendants claim have any purported obligation to pay in the future, relating to an non-initial claim

for Veteran Administration disability benefits, and from whom Defendants charged, demanded, or collected any fee or payment in connection with such assistance.

**California Class of Dependents of Claimants**

All Eligible Dependent Spouses of veterans of any branch of the United States Armed Forces residing in California who, from March 1, 2022, through the date of class certification, suffered any reduction in their dependent related VA disability benefits as a result of Defendants or any other operating entity of Defendants which, directly or indirectly, collected any fee or payment in connection with initial claims for VA benefits.

115. Excluded from the Classes are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any Defendants officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

116. Plaintiffs reserve the right to amend the Class definitions.

117. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence that would be used to prove those elements in an individual action asserting the same claims.

118. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

**A. Ascertainability**

119. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control.

**B. Numerosity**

120. Plaintiffs are representative of the proposed Class, consisting of thousands, if not tens of thousands, of individual Veterans who have been injured and

harmed by Defendants' unlawful fee-charging scheme, far too many to join in a single action.

121. The exact number of Class Members is not presently known but is readily ascertainable through Defendants' business records, including Service Agreements signed by Veterans, fee invoices and billing statements, records of fees charged and collected, records of CallBot calls and monitoring of Veterans' disability payments, customer lists and contact information maintained by Defendants or their agents, payment transaction records, and collection call logs.

122. The numerosity requirement is satisfied and Class Members are so numerous that joinder of all Class Members would be impracticable. Class Members are located throughout the United States, including in all fifty states and U.S. territories, making joinder not only impracticable but effectively impossible. Plaintiffs estimate that Defendants have charged fees to at least 2,000 to 5,000 Veterans, with some estimates suggesting that Defendants have monitored the disability payments of tens of thousands of Veterans through their CallBot system.

123. Each Class Member has suffered injury as a result of Defendants' unlawful fee charging and collection practices, but the injury to each Class Member is relatively modest in relation to the burden and expense of individual litigation, making class litigation the superior method for adjudicating these claims.

**C. Commonality**

124. Questions of law and fact common to the Plaintiffs and the Class exist and predominate over any questions affecting only individual Class Members. For example:

- whether 38 U.S.C. § 5904(c)(1) prohibits Defendants from charging fees for assistance with initial VA disability claims;
- whether Defendants are unlawfully operating as a claims agent/consultant given its lack of VA accreditation;

- whether Defendants' fee structure—charging five times the monthly disability increase—violates federal law;
- whether Plaintiffs and Class Members provided Defendants and/or their agents with express consent or authorization to obtain and use their PII and/or confidential financial information from the VA;
- whether Defendants' use of CallBot to monitor Veterans' disability payments constitutes unauthorized access to PII and/or confidential financial information in violation of federal law;
- whether Defendants' Service Agreements adequately disclose the fees charged, the legal basis for the fees, and the availability of free services;
- whether Defendants' violated Cal Civ Code § 1770(a),subsections (2), (9), (14), (16), and (24);
- whether, and in what amount damages are owed to Class Members for Defendants' unlawful conduct;
- whether injunctive relief is appropriate prohibiting Defendants' unlawful practices;
- Whether punitive damages are appropriate; and,
- whether an equitable disgorgement of unlawfully collected fees is appropriate.

125. These common questions predominate over any individual questions that may exist, such as the specific amount charged to individual Class Members or the exact circumstances of each Veteran's interaction with Defendants. The law and facts applicable to Plaintiffs apply with equal force to all Class Members.

**D. Typicality**

126. Plaintiffs' claims are typical of those of the Class because Plaintiffs—like all members of the Class: (1) engaged Defendants' services for assistance with VA disability claims or appeals, (2) were charged fees by Defendants that violated federal

law, (3) had their PII used by Defendants' CallBot system to monitor their disability payments with inadequate disclosure or without express consent, (4) were subjected to aggressive and unlawful collection demands from Defendants, and (5) were not adequately informed of their legal rights or the availability of free services from VA-accredited nonprofits.

127. Plaintiffs are typical of those the Class Members. Plaintiffs' experience reflects the systematic and unlawful scheme through which Defendants solicit, service, and charge all members of the Class in the same manner and through the same processes. Any variation in individual circumstances (such as the specific amount charged or the type of disability claim) goes to the measure of damages, rather than the validity of the underlying claims.

**E. Adequacy of Representation**

128. Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages Plaintiffs have suffered is typical of other Class Members.

129. Plaintiffs have also retained counsel experienced in prosecuting complex class action cases. Plaintiffs and Plaintiffs' counsel intend to vigorously prosecute this action on behalf of the Class, will conduct thorough discovery, will incur significant expenses and attorney's fees in doing so, and will represent the Class vigorously through trial or settlement negotiations. The named Plaintiffs have a substantial interest in the outcome of this litigation, as they are members of the Class and will benefit from any recovery or injunctive relief obtained.

**F. Superiority**

130. Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods

for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds or thousands of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical for those Class Members given the relatively modest amount of the claim, and to impose a burden on the courts.

131. Individual damages are small relative to the collective claims. While individual Veterans may have been charged $1,000 to $20,000 each, the aggregate damage to the Class likely exceeds $5,000,000 to $50,000,000 or more. No individual Veteran could reasonably afford to bring a separate lawsuit against Defendants given the costs of litigation, attorney's fees, expert witnesses, and discovery to prosecute a separate lawsuit.

132. Defendants' conduct is systematic and uniform across all Class Members. All Class Members were subjected to the same unlawful fee structure, the same deceptive representations and omissions, and the same use of CallBot monitoring. There is a strong public interest in preventing continuing violations of federal law protecting Veterans' benefits and in deterring similar conduct by other unaccredited VA disability claims consulting companies.

133. A class action will achieve economies of scale and judicial efficiency by resolving all Class Members' claims in a single proceeding, rather than permitting hundreds or thousands of individual lawsuits that would burden the courts and potentially result in inconsistent outcomes.

134. The nature of this action and the nature of laws available to Plaintiffs and

Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged. A class action is superior because, in individual actions, Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered. Proof of a common course of conduct to which the named Plaintiffs were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged. Finally, individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

135. This litigation of the claims brought herein as a class action is manageable. Defendants' and their agents' uniform conduct, uniform representations and omissions, uniform methods of data access and collection, consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action. Defendants' business records can provide a comprehensive list of Class Members, and damages can be calculated based on objective criteria (fees charged to each Class Member plus reasonable interest).

136. Adequate notice can be given to Class Members directly using information maintained in the records of Defendants or their agents.

## CAUSES OF ACTION

## COUNT I: DECLARATORY JUDGMENT

**(On Behalf of Plaintiffs and the Nationwide Classes)**

137. Plaintiffs incorporate by reference paragraphs 1-136 above as if fully set forth herein.

138. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this

Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are unlawful.

139. An actual, present controversy exists between the Plaintiffs, including the proposed members of a Nationwide Class of Veterans, and Defendants concerning the validity and enforceability of Defendants' engagement agreements.

140. Plaintiffs seek a judicial declaration that Defendants' Service Agreements with Plaintiffs and Class Members, including any purported arbitration clauses, are unlawful, void, and unenforceable because they call for the performance of services that federal law and California public policy prohibit, and because the agreements themselves are structurally designed to facilitate and shield an illegal fee scheme targeting VA disability benefits.

141. Further, Plaintiffs seek a judicial declaration that Defendants cannot compel arbitration or otherwise rely on the illegal Service Agreements to avoid judicial or class-wide relief because the arbitration clause and any class action waiver are invalid and cannot be invoked to bar this action.

142. Specifically, under federal law, as set forth, *inter alia*, only individuals and entities accredited by the VA may lawfully prepare, present, or prosecute VA disability benefits claims on behalf of Veterans for compensation, subject to strict fee and conduct regulations.

143. Defendants, as alleged herein, are not VA accredited representatives, agents, or attorneys, yet they purport to contract with Veterans to "assist," "optimize," or "manage" their VA disability claims in exchange for contingent or other fees tied to the Veteran's VA disability compensation.

144. The California Supreme Court long ago explained that courts will not lend their aid to enforce contracts that call for the performance of services that are unlawful under a regulatory licensing scheme, and that where a contract's subject matter violates

such licensing requirements, the agreement is void and unenforceable in its entirety as an "illegal" bargain. *See Loving & Evans v. Blick*, 33 Cal. 2d 603, 609 (1949). Such contracts—regardless of facial form—should not be enforced when enforcement would effectively ratify and reward unlicensed or otherwise illegal services.

145. Defendants' engagement agreements are contracts for illegal licensed services because they: (a) promise professional-type representation and handling of VA disability claims; (b) are entered into by nonaccredited entities that are legally barred from charging for such services; and (c) extract fees from Veterans directly out of their VA disability compensation in a manner that conflicts with the governing federal and state regulatory regime. The agreements are unlawful in their very object and consideration.

146. Further, the California Supreme Court has explained that contracts for professional services are unenforceable where they conflict with statutory and professional conduct rules that embody fundamental public policy. *See Sheppard v. JM Mfg. Co.*, 6 Cal. 5th 59, 87 (2018).

147. Here, the arbitration clause is an integral part of the unlawful scheme, designed to insulate the illegality from judicial review and collective redress.

148. The provision is employed, not as a neutral dispute resolution mechanism, but as a tool to shield a statutorily illegal business model that depends on extracting unlawful fees from VA disability payments from public adjudication, regulatory scrutiny, and collective relief for Veterans. The arbitration clause is thus intertwined with, and in service of, the same illegal purposes that render the overall engagement void.

149. The arbitration clause, if any, is substantively and procedurally unconscionable and contrary to public policy because it: (a) is embedded in an illegal agreement whose central purpose is to facilitate unlawful, unaccredited representation or assistance with preparation, presentation, or prosecution of VA claims for fees; (b)

operates to deter and suppress enforcement of the very statutes and regulations that prohibit Defendants' business model; and (c) is presented to vulnerable Veterans, including those with service-connected disabilities, without full and fair disclosure of the illegality and conflicts inherent in the arrangement.

150. Because the arbitration provision is itself part and parcel of the unlawful, statutorily condemned fee scheme—and because Plaintiffs' challenge is directed at the enforceability of that provision in light of the governing public policy and regulatory regime—this Court should adjudicate such challenges and refuse enforcement of the arbitration clause.

151. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

- Defendants' engagement agreements with Plaintiffs and Class Members, including any purported arbitration clauses or class action waivers, are unlawful, void, and unenforceable; and
- Defendants cannot compel arbitration or otherwise rely on the engagement agreements to avoid judicial or class-wide relief because the arbitration clause and any class action waiver are invalid, illegal and unenforceable and cannot be invoked to bar this action.

**COUNT II: VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**

**Cal. Civ. Code § 1750, *et seq*. ("CLRA")**

**(On Behalf of Plaintiffs and the California Classes)**

152. Plaintiffs incorporate by reference paragraphs 1-136 above as if fully set forth herein.

153. Defendants are each a "person," and provided "services" within the meaning of California Civil Code sections 1761(a) and 1770.

154. Defendants' acts and practices, as alleged in this complaint, violate California Civil Code sections 1770(a)(2), (9), (14), (16), and (24) because they include

unfair and deceptive acts and practices in connection with services Defendants provided relating to applications for veterans' disability benefits:

- Misrepresenting the source, sponsorship, approval, or certification of goods or services § 1770(a)(2);
- Advertising goods or services with intent not to sell them as advertised, § 1770(a)(9);
- Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, § 1770(a)(14);
- Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not, § 1770(a)(16); and
- Charging or receiving an unreasonable fee to prepare, aid, or advise any prospective applicant, applicant, or recipient in the procurement, maintenance, or securing of public social services, § 1770(a)(24).

155. Defendants have known for years, and at least since 2017, as a result of cease-and-desist letters sent to Defendants by the VA OGC, that their conduct violates federal law and regulations because, among other things, Defendants were not accredited and thus were not authorized to assist or represent Veterans in their claims for veterans' disability benefits. Defendants have also known that their practices of charging Veterans fees when they have been awarded an increase in disability benefits, even when Defendants did little, or no, work to effect the increased award, were deceptive and violated applicable law.

156. Defendants had ample means and opportunities to alert Plaintiffs and Class Members of the illegal nature of their services, or that the fees they charged were excessive under applicable law and sometimes included fees where no services had been provided. Defendants uniformly failed to disclose these details.

157. Had Defendants disclosed these details, Plaintiffs and Class Members would not have engaged Defendants for assistance with their Veterans Disability claims.

158. Defendants were under a duty to disclose the true nature of their services, including that Defendants were not accredited because of their exclusive knowledge of these facts, because Defendants had exclusive knowledge of whether they had performed any work to warrant payment for any particular increase in disability payments, and because Defendants made partial representations about their services.

159. Defendants' omissions were material. Each Plaintiff was exposed to Defendants' specific representations about their services at the time Plaintiffs engaged Defendants' services, if not before. Each Plaintiff received and entered into the illegal service agreement or contract.

160. Plaintiffs and Class Members were unaware of the true nature of Defendants' services and that Defendants were acting illegally.

161. Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiffs' desire to use services such as Defendants' in the future if they can be assured that Defendants and their services comply with applicable law.

162. Under California Civil Code section 1782(a), on their own behalf and on behalf of the Class, Plaintiffs served CLRA notices to Defendants on April 9, 2-26.

163. Plaintiffs' CLRA notices were sent via certified mail, return receipt requested, to Defendants' principal place of business, advising Defendants that they are in violation of CLRA and must refund the excess fees charged in violation of California Civil Code section 1770. Should Defendants' fail to respond within 30 days, Plaintiffs will amend their Complaint to see damages as permitted under the CLRA.

164. Plaintiffs were injured by Defendants' CLRA violations. As a result, Plaintiffs are entitled to, and currently seek, injunctive and declaratory relief hereunder.

165. In accordance with California Civil Code section 1780(d), Plaintiffs' CLRA venue declarations are attached to this Complaint as Exhibits C through E.

**COUNT III: VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code § 17200, *et seq*.**

**(On behalf of Plaintiffs and the California Classes)**

166. Plaintiffs incorporate by reference paragraphs 1-136 above as if fully set forth herein.

167. Defendants are each a "business" as defined by Cal. Bus. & Prof. Code § 17200 ("UCL"). The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." § 17200.

168. Defendants transact business throughout the United States, including California, and Defendants' conduct in charging unlawful fees and engaging in unlawful, unfair and deceptive practices affecting California commerce.

**Unlawful**

169. Defendants' conduct is unlawful, in violation of the UCL, because it violates the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* as set out in Count II, *supra*.

170. Defendants' conduct is also unlawful, in violation of the UCL, because it violates federal law including, but not limited to, 38 U.S.C. § 5804, and 38 C.F.R. 626 *et. seq.*

171. Federal statute 38 U.S.C. § 5904 sets out detailed requirements for "agent[s] or attorney[s] for the preparation, presentation, and prosecution of claims" on behalf of disabled Veterans. § 5904(a)(1).

172. These requirements include that "a fee may not be charged, allowed, or paid for services of agents and attorneys . . . provided . . . before the date on which a claimant is provided notice of [the VA]'s initial decision . . . with respect to the case." § 5904(c)(1). Defendants charged Plaintiffs and Class Members fees for assistance with

preparing, presenting, and prosecuting VA disability claims before the VA's initial decision in direct violation of this statutory prohibition.

173. In addition, section 5904 requires that "agent[s] or attorney[s] for the preparation, presentation, and prosecution of claims" on behalf of disabled Veterans must meet the requirements set out by the Secretary of Veterans Affairs. *See* 38 C.F.R. § 14.636. At all times relevant hereto, Defendants violated those requirements.

174. Defendants are not an accredited attorney, organization, representative, or claims agent and have no legal authority to charge any fee whatsoever for VA disability claims representation services. Defendants' conduct directly violates 38 U.S.C. § 5904(c)(1), as implemented by 38 C.F.R. § 14.636.

175. Specifically, Defendants performed many functions that, because they are unaccredited, they were not authorized to perform including, but not limited to, assistance with collecting records, organizing documentation, assembling documentation, assisting in the filling out of forms, setting up medical examinations, providing documentation to medical providers to be used in medical examinations and for use in applying to the VA, communicating with Veterans on how to improve chances of success in process, forwarding communications and/or forms to the VA on the Veteran's behalf, and, in many instances, assisting in filling out part of forms or the entirety of forms to be submitted to the VA.

176. Plaintiffs and Class Members have been injured by Defendants' unlawful fee charging and seek recovery of all fees unlawfully charged and collected, prejudgment interest at the maximum rate permitted by law, punitive damages for Defendants' knowing and willful violation of federal law, and attorney's fees and litigation costs.

**<u>Unfair</u>**

177. Defendants' conduct is unfair in contravention of the UCL because it violates federal and California public policy, legislatively declared in Title 38 of the

United States Code, Title 38 of the Code of Federal Regulations, the FTC Act, 15 U.S.C. §§ 41 *et seq.*, and Cal. Civ. Code § 1770.

178. Defendants also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiffs and the Class Members. Defendants engaged in unfair business practices and acts, in at least the following respects:

- failing to disclose that they were not accredited and therefore not qualified or legally permitted to represent Veterans or otherwise provide services to them regarding their claims for Veterans disability benefits;
- charging fees to which they were not entitled under the law;
- charging fees in excess of those permitted under the law;
- charging fees for services related to disability benefit increases when when no services were provided;
- misrepresenting the nature, characteristics, and benefits of their services;
- failing to disclose material facts regarding fees, legal requirements, and the availability of free or lower-cost alternatives;
- engaging in unlawful, improper, and/or predatory collection efforts; and

179. The gravity of harm resulting from Defendants' unfair conduct outweighs any potential utility. Defendants charged Plaintiffs and Class Members unfair fees because they were illegal, and because they were excessive.

- The fees were illegal because Defendants failed to comply with the requirements under the law to permit them to charge fees for the services they rendered.
- The fees were unfair because they were in excess of the amount permitted

under the law and, in many situations, for an increase in benefits for which Defendants provided no services.

- Defendants' unfair business practices harm Veterans and their spouses and are part of a common and unform course of wrongful conduct.
- There is no potential utility here aside from enriching Defendants (at Veterans' and their spouses' expense) because Plaintiffs and Class Members would have been able to receive the same services at no cost, or for a reasonable cost by accredited providers.

180. The harm from Defendants' conduct was not reasonably avoidable by the Veterans. Defendants failed to disclose that their services were being performed in violation of the law. Defendants misled Veterans who suffer from service-related disabilities, many of which may include PTSD, to believe that Defendants provided services to Veterans that were not only legal, but consisted of tasks Veterans were unable to perform on their own that were necessary for their applications in order to receive Veterans disability benefits. Defendants also misled Veterans to believe that Defendants' services were in compliance with applicable law, including its protections. Plaintiffs did not know, and had no reasonable means of discovering, that Defendants were acting in violation of the law and charging excessive fees for their services.

181. There were reasonably available alternatives that would have furthered Defendants business. Specifically, Defendants could have complied with applicable law and met all of the requirements for becoming accredited and charging fees in compliance with applicable law. By doing so, Defendants could have provided their services and earned reasonable fees from doing so.

**<u>Fraudulent (Fraud by Omission)</u>**

182. Defendants' conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

- Defendants knowingly and intentionally concealed from Plaintiffs and

Class Members that the services Defendants provided were illegal;

- Defendants knowingly and intentionally concealed from Plaintiffs and Class Members that the fees Defendants charged for its services were illegal;
- Defendants knowingly and intentionally concealed from Plaintiffs and Class Members that Defendants charged Plaintiffs and Class Members even where no services were provided;
- Defendants knowingly and intentionally concealed from Plaintiffs and Class Members that the fees Defendants charged for its services were excessive;
- Defendants volunteered information to Plaintiffs and Class Members through advertising, marketing materials, and other means that the services it provided were legal, and at a reasonable cost without disclosing facts that would have materially qualified those partial representations.

183. Defendants had ample means and opportunities to alert Plaintiffs and Class Members of the illegal nature of their services, or that the fees they charged were excessive under applicable law and sometimes included fees where no services had been provided. Defendants uniformly failed to disclose these details.

184. Had Defendants disclosed these details, Plaintiffs and Class Members would not have engaged Defendants for assistance with their Veterans Disability claims.

185. Defendants were under a duty to disclose the true nature of their services, including that Defendants were not accredited because of their exclusive knowledge of these facts, because Defendants had exclusive knowledge of whether they had performed any work to warrant payment for any particular increase in disability payments, and because Defendants made partial representations about their services.

186. Defendants' omissions were material. Each Plaintiff was exposed to Defendants' specific representations about their services at the time Plaintiffs engaged Defendants' services, if not before. Each Plaintiff received and entered into the illegal service agreement or contract.

187. Plaintiffs and Class Members were unaware of the true nature of Defendants' services and that Defendants were acting illegally.

188. Absent Defendants' unlawful, unfair and fraudulent conduct, Plaintiffs and Class Members, who were all unaware of the illegality of Defendants' services and the excessive and unfair fees charged, Plaintiffs and the Class Members would not have engaged Defendants' services. Defendants omitted material information that it was under a duty to disclose and on which Plaintiffs and the Class Members would have relied had they known.

189. Through their unlawful, unfair, and fraudulent conduct, Defendants acquired Plaintiffs' money. Plaintiffs and Class members suffered injury in fact, including lost money or property, as a result of Defendants' unlawful, unfair, and fraudulent conduct.

190. Plaintiffs and Class members accordingly seek appropriate relief, including: (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and fraudulent practices. Plaintiffs also respectfully seek reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure § 1021.5.

**COUNT IV: VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, Cal. Civ. Code § 1788, *et seq.***

**(On behalf of Plaintiffs and the California Classes)**

191. Plaintiffs incorporate by reference paragraphs 1-136 above as if fully set forth herein.

192. Each Defendant is a "debt collector" and/or "creditor" within the meaning

of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code § 1788, *et seq*., because they are persons or business entities engaged in a business the principal purpose of which is the collection of debts, or who regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, including debts allegedly owed by Veterans arising from personal, family, or household purposes.

193. The obligations that Defendants attempted to collect from Plaintiffs and Class Members are "consumer debts" within the meaning of Cal. Civ. Code § 1788.2, in that they are obligations or alleged obligations of natural persons to pay money arising from transactions primarily for personal, family, or household purposes.

194. Defendants violated the RFDCPA, including but not limited to Cal. Civ. Code §§ 1788–1788.33 and incorporated provisions of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq*., through their collection practices, by:

- Claiming, attempting, or threatening to enforce debts that Defendants knew were not legitimate, and asserting rights that Defendants knew did not exist, including by attempting to collect amounts not expressly authorized by law or by agreement and by threatening legal action they had no present intention or legal right to take, in violation of Cal. Civ. Code §§ 1788.10–1788.13 and 15 U.S.C. § 1692e;
- Willfully communicating with Plaintiffs and California Class Members, many of whom are Veterans with service-connected mental health conditions, with such frequency and in such manner as could reasonably be expected to harass, oppress, or abuse them, including placing multiple collection calls on a daily basis, in violation of Cal. Civ. Code § 1788.11 and 15 U.S.C. § 1692d;
- Using abusive, unfair, or unconscionable means in attempting to collect the alleged debts, including repeated harassing phone calls and threats

of legal action and adverse consequences that Defendants had no present intention or legal right to take, in violation of Cal. Civ. Code §§ 1788.10–1788.11 and 15 U.S.C. §§ 1692d, 1692e, and 1692f;

- Misrepresenting the character, amount, and legal status of the alleged debts and misleading Veterans regarding Defendants' authority to collect and the consequences of non-payment, in violation of Cal. Civ. Code §§ 1788.13 and 1788.17 and 15 U.S.C. § 1692e; and
- Continuing collection efforts after Plaintiffs and California Class Members disputed the alleged debts and advised Defendants that the debts were unlawful or inaccurate, thereby persisting in claiming and attempting to enforce debts that Defendants knew, or should have known, were not legitimate, in violation of Cal. Civ. Code §§ 1788.14–1788.17 and 15 U.S.C. §§ 1692e, 1692f, and 1692g.

195. As a direct and proximate result of Defendants' violations of the RFDCPA and the incorporated provisions of the FDCPA, Plaintiffs and California Class Members are entitled to recover actual damages, statutory damages, and attorneys' fees and costs as permitted under Cal. Civ. Code § 1788.30 and 15 U.S.C. § 1692k.

## COUNT V: UNJUST ENRICHMENT

**(On behalf of Plaintiffs, the Nationwide Classes and/or California Classes)**

**(As Pleaded in the Alternative)**

196. Plaintiffs incorporate by reference paragraphs 1-136 above as if fully set forth herein.

197. Defendants have been unjustly enriched by receiving and retaining millions of dollars in unlawful fees collected from Plaintiffs, Nationwide Class Members, and California Class Members. Defendants' enrichment is unjust because: (1) the fees have no legal basis under federal or state law; (2) Plaintiffs, Nationwide Class Members, and California Class Members did not voluntarily confer the benefit

with full knowledge of the fee obligation; (3) Defendants failed to provide reasonable consideration (meaningful services) in exchange for the fees; and (4) retention of the fees is inequitable and against public policy.

198. Plaintiffs, Nationwide Class Members, and California Class Members seek restitution of all unlawfully collected fees, plus prejudgment interest and disgorgement of all profits derived from the unlawful scheme.

199. Plaintiffs, Nationwide Class Members, and California Class Members conferred unlawful monetary benefits upon Defendants. After all, Defendants benefited from (1) accepting payment and/or commission from Plaintiffs and Nationwide Class Members, and (2) using their PII to facilitate its provision of unlawful products and/or services.

200. Defendants appreciated or had knowledge of the benefits it received from Plaintiffs, Nationwide Class Members, and California Class Members.

201. Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiffs' and the Class Members' payments because Defendants failed to adequately disclose to Plaintiffs and the Class Members their services were in violation of federal law.

202. Plaintiffs, Nationwide Class Members, and California Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

203. Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiffs, Nationwide Class Members, and California Class Members conferred upon them.

204. As a direct and proximate result of Defendants' conduct, Plaintiffs, Nationwide Class Members, and California Class Members have suffered and will suffer injury.

205. Plaintiffs, Nationwide Class Members, and California Class Members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs, Nationwide Class Members, and California Class Members may seek restitution or compensation.

206. Defendants should be compelled to disgorge into a common fund-for the benefit of Plaintiffs, Nationwide Class Members, and California Class Members all unlawful or inequitable proceeds that it received because of its misconduct.

## DAMAGES

### Actual Damages

207. Plaintiffs and Class Members have directly suffered financial injury equal to all fees charged and collected by Defendants, which Plaintiffs estimate to total greater than $5,000,000 to $50,000,000 or more for the entire Class.

208. Additionally, Class Members are entitled to prejudgment interest at the maximum rate permitted by law from the date each fee was charged through the date of judgment.

### Statutory Damages

209. Plaintiffs and the California Class Members are entitled to relief under Cal. Bus. & Prof. Code § 17203, including restitution, disgorgement of all amounts wrongfully obtained, injunctive relief, and recovery of attorneys' fees and costs as permitted by law, including but not limited to Cal. Code Civ. Proc. § 1021.5.

210. Plaintiffs and the California Class Members are entitled to relief under RFDCPA and the incorporated provisions of the FDCPA, to include actual damages, and are entitled to recover actual damages, statutory damages, and attorneys' fees and costs as permitted under Cal. Civ. Code § 1788.30 and 15 U.S.C. § 1692k.

211. Defendants' knowing and willful violation of federal law (38 U.S.C. §

5904), despite explicit warnings from the VA's Office of General Counsel, warrants punitive damages.

212. Defendants' knowing and willful violation of Federal law and California state law, including: 38 U.S.C. § 5904(c)(1), UCL and RFDCPA.

213. Defendants' conduct demonstrates reckless and callous disregard for Veterans' legal rights and entitlements.

214. Punitive damages are appropriate to punish Defendants for their egregious conduct, to deter Defendants and other claims consulting companies from similar violations, and to protect the integrity of the VA benefits system and Congress's intent to protect Veterans.

**Equitable Relief: Disgorgement and Restitution**

215. In addition to monetary damages, Plaintiffs seeks equitable relief, including disgorgement of all profits derived from unlawfully collected fees, restitution of all fees charged and collected from Plaintiffs and Class Members, cancellation and reformation of unlawful Service Agreements, injunctive relief prohibiting Defendants from engaging in similar conduct in the future, and establishment of a constructive settlement fund for the benefit of Plaintiffs and Class Members.

**Attorney's Fees and Costs**

216. Plaintiffs seek an award of attorney's fees and litigation costs incurred in prosecuting this action, including reasonable attorney's fees, reasonable attorney's fees, and costs of investigation, expert witnesses, and litigation, as provide by applicable statutory law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this case be certified and maintained as a class action and for a judgment to be entered upon Defendants as follows:

1. Certify the Class or Classes as proposed herein, designating Plaintiffs

as Class Representative, and appointing undersigned counsel as Class Counsel;

2. A judgment in favor of Plaintiffs and the Classes on all Counts;

3. Award economic and compensatory damages on behalf of Plaintiffs and all Class Members;

4. Award actual, general, special, incidental and consequential damages equal to all fees unlawfully charged and collected from Plaintiffs and Class members;

5. Award statutory damages of up to $1,000 for each named Plaintiff per violation of the RDFCPA, and foreach California Class member statutory damages, both pursuant to Cal. Civ. Code § 1788.17 incorporating the requirements of 15 U.S.C. §§ 1692b to 1692j and corresponding remedies set out in 15 U.S.C. 1692k(a)(2)(B)(ii), "such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector";

6. Award punitive damages as permitted under law in an amount to be determined at trial;

7. Order equitable relief, including disgorgement of all profits derived from unlawfully collected fees, restitution of all fees to Class members, cancellation and reformation of unlawful Service Agreements, injunctive relief compelling Defendants to cease their unlawful conduct and to account to Plaintiffs and Class Members for their unjust enrichment, and to establish a claims administration process for distributing recovered funds;

8. Award reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action;

9. Pre-judgment and post-judgment interest at the maximum rate permitted by law; and,

10. Grant such other and further relief this Court deems just and appropriate.

**<u>JURY DEMAND</u>**

Plaintiffs respectfully demand a trial by jury on all issues in this matter.

Dated: April 9, 2026 Respectfully submitted,

*/s/ Kiley Lynn Grombacher*
**BRADLEY/GROMBACHER, LLP**
Kiley Lynn Grombacher (SBN 245960)
Marcus J. Bradley, Esq. (SBN 174156)
31355 Oak Crest Drive, Suite 210
Westlake Village, California 91361
Phone: (805) 270-7100
Fax: (805) 270-7589
Email: kgrombacher@bradleygrombacher.com

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLLC**
Jennifer Caldwell Byrd*
Bryan F. Aylstock*
Douglass A. Kreis*
S. Mary Liu (SBN 282884)
17 E. Main Street, Suite 200
Pensacola, FL 32502
Phone: (850) 202-1010
Fax: (850) 916-7449
Email: jbyrd@awkolaw.com
Email: baylstock@awkolaw.com
Email: dkreis@awkolaw.com
Email: mliu@awkolaw.com

[Additional Counsel on following Page]

///
///
///
///
///
///
///
///
///

**PITTMAN, DUTTON, HELLUMS, BRADLEY & MANN, P.C.**
Chris T. Hellums*
Jonathan S. Mann*
2001 Park Place North, Suite 1100
Birmingham, AL 35203
Phone: (205) 322-8880
Fax: (205) 328-2711
Email: chrish@pittmandutton.com
Email: jonm@pittmandutton.com

* *pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Proposed Classes*